UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENRICK CLAIBORNE,<br><br>         Plaintiff,<br><br>v.<br><br>CHURCH & DWIGHT CO., INC.,<br><br>         Defendant. | Case No.: 3:17-cv-00746-L-JLB<br><br>**ORDER DENYING DEFENDANT'S MOTION [Doc. 15] TO DISMISS** |

  Pending before the Court is Defendant Church and Dwight Company, Inc.'s ("Defendant") motion to dismiss Plaintiff Kenrick Claiborne's ("Plaintiff") Complaint. Pursuant to Civil Local Rule 7.1(d)(1), the Court decides the matter on the papers submitted and without oral argument. For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss.

//

//

//

//

//

//

//

1

# I. BACKGROUND

This is a false advertising case. Defendant is a major manufacturer of household goods. Among its product lines are Trojan brand male condoms. At least two[1] lines of Trojan brand condoms (the "Condoms") have the words "Made in U.S.A." printed on the packaging. According to Plaintiff, Defendant's "Made in U.S.A." representation violates California law because more than ten percent of the Condoms' wholesale value derives from natural latex material produced outside of the United States.

In support of his claim, Plaintiff alleges that the Condoms contain health warnings cautioning users that the products contain natural latex, which can be an allergen. Plaintiff further alleges that the United States domestic production of natural latex is minimal and 90% of the global supply of this material comes from Southeast Asia. Despite this minimal production, Plaintiff alleges the United States is the largest consumer of natural latex–accounting for approximately 20% of global consumption. Given this domestic supply and demand imbalance, Plaintiffs allege that U.S. condom manufacturers depend on imported natural latex. Plaintiffs further allege that the natural latex is the only substantial component of the Condoms.[2]

Since July 2016, Plaintiff has purchased the Condoms on numerous occasions. Plaintiff alleges that, in making his purchasing decisions, he relied on the "Made in U.S.A." representation. Plaintiff further alleges that, but for this representation, he would have either chosen not to purchase the Condoms or paid less for them. Accordingly, on April 13, 2017, Plaintiff filed a putative class action complaint alleging violation of California Business and Professions Code Sections 17200 and 17500; violation of California Civil Code Section 1750; and breach of express and implied warranties. (Compl. [Doc. 1].) Defendant now moves to dismiss these claims. (MTD [Doc. 15].) Plaintiff opposes. (Opp'n [Doc. 24].)

---

[1] These are the Magnum Thin Ultrasmooth and the Magnum Ecstasy Ultrasmooth condoms.
[2] Other components may include packaging, spermicide, lubricant, and anesthetics.

## II. LEGAL STANDARDS

### A. Fed. R. Civ. P. 12(b)(6)

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983). In ruling on a Rule 12(b)(6) motion, the court must assume the truth of all factual allegations and "construe them in the light most favorable to [the nonmoving party]." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) (internal citations and quotation marks omitted). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965. A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

As a general matter, courts may not consider material outside the complaint when ruling on a Rule 12(b)(6) motion. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, courts may consider documents specifically identified in the complaint whose authenticity is not questioned by the parties. *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superseded by statutes on other grounds). Moreover, courts may consider the full text of those documents, even when the complaint quotes only selected portions. *Id.* The court may also consider material properly subject to judicial notice without converting the motion into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

//
//
//

**B. Fed. R. Civ. P. 12(b)(1)**

Rule 12(b)(1) provides that a court may dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Although the defendant is the moving party on a motion to dismiss, the plaintiff is the party invoking the court's jurisdiction. Therefore, the plaintiff bears the burden of proof on the necessary jurisdictional facts. *McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001). To meet this burden and survive a motion to dismiss under Rule 12(b)(1), a plaintiff need only show that its claim is not "so unsubstantial, implausible, foreclosed by prior decisions of [the Supreme Court], or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court, whatever may be the ultimate resolution of the federal issues on the merits." *Oneida Indian Nation of N.Y. State v. Oneida County, New York*, 414 U.S. 661, 666-67 (1974) (internal citations omitted).

Subject matter jurisdiction cannot be waived, and the court must dismiss an action whenever it determines that the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *see also Hansen v. Dep't of Treasury*, 528 F.3d 597, 600 (9th Cir. 2007). In ruling on a challenge to subject matter jurisdiction, the district court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary. *See Thornhill*, 594 F.2d at 733.

## III. DISCUSSION

The central question this motion presents is whether Plaintiff has plausibly alleged that more than ten percent of the Condoms' wholesale value comes from outside of the United States. Under California law, it is unlawful to market as "Made in U.S.A." any product if more than ten percent of the product's final wholesale value represents products or services hailing from outside of the United States. Cal Bus. & Prof. Code § 17533.7.

Defendant argues Plaintiff has failed to plausibly allege a violation of Cal. Bus. & Prof. Code § 17533.7 because Plaintiff has not alleged exactly what percentage of the

Condoms' wholesale value stems from foreign parts and services ("foreign wholesale percentage value"). It is true that Plaintiff has not alleged exactly what percentage of the wholesale value comes from abroad. That said, to properly state a violation of § 17533.7 Plaintiff need only plausibly allege that the foreign wholesale value is greater than ten percent. There is no requirement that a plaintiff allege exactly how much more than ten percent of the total wholesale value stems from abroad.

Here, Plaintiff has alleged that the main ingredient in the Condoms is natural latex. Plaintiff has also alleged that the United States is the world's leading consumer of natural latex. Plaintiff has further alleged that domestic production of natural latex is minimal and ninety percent of the material comes from Southeast Asia. Because of this supply and demand imbalance, Plaintiff alleges that condom manufacturers who use natural latex depend on foreign imports of the material. Construing the foregoing allegations in a light most favorable to Plaintiff, the Court finds plausible Plaintiff's assertion that the foreign wholesale percentage value of the Condoms' is greater than ten percent.

Next, Defendant argues that Plaintiff has failed to adequately allege that he suffered injury from any misrepresentations. This argument lacks merit. Plaintiff has alleged that, but for the "Made in U.S.A." representation, he would not have purchased the Condoms or he would have paid less. The California Supreme Court has explicitly held that such allegations are sufficient to state a *prima facie* case for damages in a false advertising case. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 330 (2011).

Finally, Defendant argues that Plaintiff lacks standing to pursue injunctive relief. To have standing to pursue injunctive relief, whether individually or on behalf of a class, a Plaintiff must show a likelihood of future harm in the absence of injunctive relief. *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1041-42, 1044-45 (9th Cir. 1999). Because Plaintiff is now aware of the nature of the alleged misrepresentation, Defendant argues Plaintiff cannot be misled again.

There appears to be no binding authority on the issue of whether knowledge of the falsity of an advertisement defeats a plaintiff's standing to seek injunctive relief. District

court decisions have answered the question both ways. *Lilly v. Jamba Juice Co.*, 2015 WL 1248027 *3 (N.D. Cal. 2015) (collecting cases). This Court finds the cases holding that a plaintiff can have standing to pursue injunctive relief against advertising he knows to be false are more persuasive. This holding recognizes that, where false advertising misleads a consumer, the consumer tends to suffer continuing injury in the form of a lessened ability to trust that any similar future representation is accurate. *Id.* Put differently, a mislead consumer has a tendency to suspect a continuing misrepresentation. Such a consumer therefore has standing to pursue an injunction prohibiting continued false advertising because such relief could restore the consumer's trust, thus aiding him in making informed purchasing decisions in the future.[3]

Defendant contends that, even under this approach, Plaintiff lacks standing because the allegations of the Complaint establish that it is not possible for a natural latex condom to carry a lawful "Made in U.S.A." label because of insufficient domestic natural rubber production. This argument misreads the Complaint. The Complaint does not allege that it is impossible for Defendant to produce the Condoms with domestically produced natural latex. Rather, it simply alleges that because of the current natural latex domestic supply and demand imbalance, Defendant *currently* uses imported natural latex. From this it does not follow that Defendant could not switch to using domestic natural latex. If Defendant did thus change its sourcing, Defendant might elect to keep the "Made in U.S.A." representation in place. Without injunctive relief, Plaintiff could encounter difficulty in determining whether such information is accurate.

//
//
//

---

[3] The Court notes that this type of injury is not dependent upon a present intention to purchase a given product in the future. Even if Plaintiff has no present intention to make a future purchase of the Condoms, he still suffers injury from false advertising because it lessens his ability to gather all relevant information and incorporate it into his future purchasing decisions. *Lilly*, 2015 WL 1248027 *5.

## IV. CONCLUSION & ORDER

For the foregoing reasons, the Court **DENIES** Defendant's motion.

**IT IS SO ORDERED.**

Dated: November 13, 2017

*[signature]*
Hon. M. James Lorenz
United States District Judge